IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| GREGORY CONWAY, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. 3:17-CV-110-MAB |
| WEXFORD HEALTH SOURCES, INC., CHRISTINE BROWN, and LOUIS SHICKER, | ) ) ) ) ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motions for summary judgment filed by Defendants Wexford Health Sources, Inc., Louis Shicker—the Illinois Department of Corrections' Medical Director, and Christine Brown—the Healthcare Unit Administrator at Pinckneyville Correctional Center (Docs. 125, 135), Wexford's motion to strike (Doc. 140), and Director Shicker and HCUA Brown's motion to join Wexford's motion to strike (Doc. 146). For the reasons explained below, the motions for summary judgment are granted, which in turn makes the motion to strike and the motion to join moot.

### BACKGROUND

In March 2017, Plaintiff filed a *pro se* amended complaint pursuant to 42 U.S.C. § 1983 for deliberate indifference to his serious medical needs (Doc. 8). More specifically, Plaintiff alleged that Dr. Allan Brummel delayed providing him with "medically

prescribed" eyeglasses for over four months despite his repeated requests and his complaints that he was suffering from migraine headaches and blurred vision (Doc. 8, Doc. 10). He further alleged that Wexford, Director Shicker, and HCUA Brown espoused or carried out a policy, custom, or practice of denying necessary medical care to inmates in an effort to reduce costs (Doc. 8, Doc. 10). Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on an Eighth Amendment claim for deliberate indifference against Dr. Brummel, Wexford, Director Shicker, and HCUA Brown (Doc. 10).

Plaintiff and Dr. Brummel reached a resolution in January 2019 (Doc. 116). At the direction of the Court, Plaintiff sought leave to file an amended complaint that eliminated Dr. Brummel as a Defendant in this matter (Doc. 117; Doc. 122). Before that motion was fully briefed, Wexford filed its motion for summary judgment on March 29, 2019 (Doc. 125). Director Shicker and HCUA Brown then filed their motion for summary judgment on April 29, 2019 (Doc. 135). While the summary judgment briefing was still ongoing, the Court granted in part Plaintiff's motion for leave to amend, allowing him to amend his complaint to eliminate Dr. Brummel as a Defendant but not allowing him to change any of the allegations against Wexford, Director Shicker, or HCUA Brown (Doc. 138). Plaintiff filed his second amended complaint on May 1, 2019 (Doc. 139).

The parties then finished briefing the motions for summary judgment, and Wexford also filed a motion to strike various parts of Plaintiff's response brief (Doc. 140). In particular, Wexford asked to strike Plaintiff's Exhibit C, which is a June 2017 article from The Atlantic magazine and a May 2013 article from Prison Legal News, because

these articles were not produced or disclosed throughout the course of discovery (Doc. 140). Wexford also claims that Plaintiff's Response cites to and relies upon testimony and records related to another case, *Lippert v. Baldwin.* NDIL 10-4603, which is a class action lawsuit against the IDOC regarding medical and dental care (Doc. 140). Wexford argues that these materials are wholly irrelevant to this case and were not disclosed during discovery and therefore constitute inadmissible hearsay and should be stricken (Doc. 140). Defendants Shicker and Brown then filed a motion asking to join Wexford's motion to strike (Doc. 146). Plaintiff opposes the motions for summary judgment, the motion to strike, and the motion to join (Docs. 134, 137, 143, 147).

## MOTIONS FOR SUMMARY JUDGMENT

The motions for summary judgment were filed and served prior to Plaintiff filing the second amended complaint and therefore were technically directed at the claims stated in the first amended complaint. However, because the claims against Defendants Wexford, Shicker, and Brown remained substantively identical between the first and second amended complaint, the Court construes the motions for summary judgment as being directed to the claims stated in the second amended complaint.

## FACTS

Plaintiff has been incarcerated in the IDOC since 2002 (Doc. 126-1, p. 14). He is nearsighted, and it appears from the medical records that he has worn glasses since at least 2010 (Doc. 126-1, p. 28; *see* Doc. 126-2, p. 55). None of the optometric records indicate what Plaintiff's uncorrected vision was (*see* Doc. 126-2, pp. 55, 56; Doc. 126-3, p. 82), but they indicate that the prescription of his right bifocal was -0.25 sphere, -1.25 cyl, 015 axis,

add +1.50, and the prescription of his left bifocal was +0.00 sphere, -1.25 cyl, 175 axis, add +1.50 (Doc. 126-2, p. 58).[1]

On April 13, 2015, while housed at Western Correctional Center, Plaintiff's glasses were taken from him (Doc. 126-1, pp. 23, 39–40, 81). He was seen by the optometrist at Western, Dr. Ned Hubbard, on May 19, 2015 (Doc. 126-2, pp. 18, 55). Dr. Hubbard did not order Plaintiff's glasses and instead wrote in the medical records that Plaintiff was "transferring very soon to next facility. Receiving facility need[s] to submit order for DOC glasses upon arrival" (Doc. 126-2, p. 18; *see also id.* at p. 55). Two days later, Plaintiff was transferred from Western to Pinckneyville Correctional Center without glasses (Doc. 126-1, pp. 23, 40).

Upon his arrival at Pinckneyville, Plaintiff was screened for medical issues (Doc.

---

[1] "Sphere" is the spherical correction and indicates how strong the lenses need to be to correct the patient's nearsightedness or farsightedness. A negative sign means the patient is nearsighted, while a plus sign means the patient is farsighted. Generally speaking, the further away from zero the number on the prescription, the worse the patient's eyesight and the more vision correction (stronger prescription) the patient needs. Powers up to -3.00 are considered mild nearsightedness. "Cyl" is the cylindrical correction, which is used to identify an astigmatism. A perfect eye with no astigmatism has zero diopters. Most people have between 0.5 to 0.75 diopters of astigmatism. People with a measurement of 1.5 or more typically need contacts or glasses to have clear vision. "Axis" denotes the direction of an astigmatism. And "add" refers to additional magnifying power applied to the bottom of multifocal lenses, like bifocals, to assist with presbyopia, which is the inability to see close up that happens with age. In most cases, reading glass prescriptions range from +1 to +2.5, in increments of +0.25. All information in this paragraph was taken from the following sources:
  (1) AM. ACAD. OF OPTHALMOLOGY, *What Do Astigmatism Measurements Mean?*, https://www.aao.org/eye-health/diseases/what-do-astigmatism-measurements-mean (last visited March 23, 2020);
  (2) AM. REFRACTIVE SURGERY COUNSEL, *News About Nearsightedness: Just What is Myopia*, https://americanrefractivesurgerycouncil.org/news-nearsightedness-just-myopia/ (last visited March 23, 2020);
  (3) HARVARD MEDICAL SCHOOL, *Presbyopia*, https://www.health.harvard.edu/a_to_z/presbyopia-a-to-z (last visited March 23, 2020); and
  (4) WEBMD, *How to Read Your Eyeglass Prescription,* https://www.webmd.com/eye-health/how-read-eye-glass-prescription (last visited March 23, 2020).

126-1, pp. 40–41; *see* Doc. 126-2, pp. 19–20). According to Plaintiff, he told the nurse that he had seen the eye doctor two days prior and asked whether he would receive his glasses (Doc. 126-1, pp. 40–41). The medical records from the intake screening, however, do not contain any mention of Plaintiff's glasses (*see* Doc. 126-2, pp. 19–20).

Plaintiff was housed in segregation at Pinckneyville (Doc. 126-1, pp. 24, 25, 28, 37). He testified that he was generally in his cell 24 hours a day, except when he was taken to yard (which was an outdoor cage that he was in by himself) once or twice a week (*Id.* at p. 25). He testified that, without his glasses, he could see everything in is cell—he could see his cellmate and objects (*Id.* at pp. 28–29). He could still eat and drink without his glasses (*Id.* at p. 146). He could still write without his glasses (*Id.* at p. 29). In fact, Plaintiff testified that he wrote and submitted "a lot of request slips" asking for his glasses (*Id.* at pp. 30, 31, 130).

The only thing he had difficulty doing without his glasses was reading (Doc. 126-1, p. 29). This was especially problematic for Plaintiff because he was an avid reader and spent most of the time in his cell reading (*Id.* at pp. 26, 31). Without his glasses, the words were blurry so Plaintiff had to "put the book real close and squinch my eyes" in order to read (*Id.* at p. 27). Straining his eyes to read gave him a headache (*Id.* at pp. 26, 29, 33–35, 119–20, 121, 122, 124, 130). If he put the book down and stopped reading, the pain "would ease up a little bit" (*Id.* at p. 120). But if he continued reading, the pain would intensify (*Id.*). Plaintiff would lie down and rest to get rid of the headache (*Id.* at p. 122).

Plaintiff saw Dr. Allan Brummel on August 25, 2015 and learned for the first time that his glasses had not been ordered at Western (Doc. 126-1, pp. 41–42). Dr. Brummel

ordered the glasses. (Doc. 126-1, pp. 41–42; Doc. 126-2, p. 56). Plaintiff received his glasses six weeks later on October 6, 2015. (Doc. 126-1, pp. 24, 43–45; Doc. 126-2, p. 57). Plaintiff testified that once he received his glasses, he no longer had blurry vision and no longer got headaches when he read (Doc. 126-1, pp. 130–131, 134).

## DISCUSSION

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "Factual disputes are genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented, and they are material only if their resolution might change the suit's outcome under the governing law." *Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) (citation and internal quotation marks omitted). In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

The Eighth Amendment's proscription against cruel and unusual punishment imposes an obligation on states "to provide adequate medical care to incarcerated individuals." *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1072 (7th Cir. 2012) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials violate this proscription when they act with deliberate indifference to the serious medical needs of an inmate." *Holloway*, 700 F.3d at 1072 (citations omitted). To succeed on a claim for deliberate indifference, a plaintiff must demonstrate that they suffered from an "objectively serious medical

condition" and that the defendant acted with a "sufficiently culpable state of mind, meaning the official he official knew or was aware of—but then disregarded—a substantial risk of harm to an inmate's health." *Goodloe v. Sood*, 947 F.3d 1026, 1030–31 (7th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994)).

Defendants first argue they are entitled to summary judgment because Plaintiff was not suffering from a serious medical need (Doc. 126; Doc. 136). The Court agrees.

"An objectively serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Importantly, "[a] medical condition need not be life-threatening to be serious." *Id.* It can be a condition that "significantly affects an individual's daily activities" or a condition that would result in further significant injury or chronic and substantial pain if left untreated. *Hayes v. Snyder*, 546 F.3d 516, 522–23 (7th Cir. 2008). By contrast, "sniffles, minor aches and pains, or a tiny scratch, or a mild headache or minor fatigue—the sorts of ailments for which many people who are not in prison do not seek medical attention" do not constitute serious medical conditions. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 829 (7th Cir. 2009) (citations omitted).

The Seventh Circuit has stated that a "need for prescription glasses *could conceivably* constitute a serious medical need." *Franklin v. McCaughtry,* 110 Fed.Appx. 715, 721 (7th Cir. 2004) (emphasis added) (citing *Koehl v. Dalsheim,* 85 F.3d 86, 88 (2d Cir. 1996)). However, the glasses must be needed for something more than a "very slight visual impairment." *Tormasi v. Hayman*, 452 Fed. Appx. 203, 206 (3d Cir. 2011).

For instance, a serious medical need existed where an inmate's vision was "significantly blurred" without glasses, he experienced dizziness and imbalance, and he frequently fell or bumped into objects, which resulted in injuries including a broken jaw. *Tormasi*, 452 Fed. Appx. at 206. Another inmate sufficiently alleged a serious medical need where he alleged that his glasses were necessary to ameliorate severe double vision and loss of depth perception that had resulted from a prior head injury, and without his glasses, he had headaches and his left eye shifted fully into the corner of the socket and rendered it almost sightless. *Koehl v. Dalsheim*, 85 F.3d 86, 87-88 (2d Cir. 1996). *See also Li v. Contra Costa Cty.*, No. 16-CV-02861-EMC, 2017 WL 4861487, at *9 (N.D. Cal. Oct. 24, 2017) (reasonable jury could find serious medical need existed where plaintiff's uncorrected vision was 20/100 and defendants' expert opined that 20/30 to 20/80 vision would be sufficient for daily living for a typical person); *Benter v. Peck,* 825 F.Supp. 1411, 1416–17 (S.D. Iowa 1993) (serious medical need existed where plaintiff's uncorrected vision was 20/400, which made him legally blind, and he could not work or function in general prison population without glasses).

On the other hand, district courts in this Circuit and others have routinely held that the need for reading glasses is not a serious medical need, even if reading without glasses causes headaches. *Brown v. Obaisi*, No. 16 CV 10422, 2018 WL 4467098, at *7 (N.D. Ill. Sept. 18, 2018) ("[C]ourts have held that a mere lack of prescription glasses is not a serious medical need if the inmate is able to read or write to some extent—even when doing so without glasses is suboptimal."); *Rodriguez v. D'Agostini*, No. 2: 18-CV-0172 KJN P, 2018 WL 1256766, at *3 (E.D. Cal. Mar. 12, 2018) ("The need for reading glasses does

not present a serious medical need."); *McIntosh v. Malueg*, No. 09-C-1106, 2011 WL 3684777, at *6 (E.D. Wis. Aug. 23, 2011) ("The need for glasses, especially reading glasses, is not per se a serious medical need."); *Canell v. Multnomah Cty.*, 141 F. Supp. 2d 1046, 1057 (D. Or. 2001) ("While severe eye injuries or legal blindness may constitute a serious medical need, that is not the case with reading glasses.").[2]

Here, Plaintiff was in segregation at Pinckneyville for approximately four and a half months without any glasses. Plaintiff's prescription indicates that he was very mildly nearsighted in his right eye but needed no correction in his left eye, had a moderate astigmatism in both eyes, and needed a mild amount of correction in order to read. *See supra* pp, 3–4, n.1. This suggests his glasses were fairly low-powered and his vision issues

---

[2] *See also Bellah v. McGinnis,* 42 F.3d 1388, 1994 WL 664926, at *1 (6th Cir. 1994) (holding moderate nearsightedness did not constitute a serious medical need); *Brown*, 2018 WL 4467098, at *7 (finding presbyopia was not a serious medical condition where inmate complained he could not read as well as he should but he was still able to write grievances and there was no evidence of pain or physical harm); *Starks v. Powers*, No. 02-cv-1252, 2006 WL 929359, at *5 (S.D. Ill. Apr. 10, 2016) (affirming jury's verdict in favor of defendants and concluding evidence was not sufficient for reasonable jury to find serious medical need where plaintiff complained of headaches, tearing, and dizziness when he tried to read without glasses); *Salinas v. Hamilton*, No. A-14-CA-1073-LY, 2014 WL 7405711, at *1 (W.D. Tex. Dec. 30, 2014) (concluding plaintiff's condition was "nothing more than common near-sightedness" and not a serious medical need where plaintiff complained of difficulty seeing things in the distance and eye pain when he watched television); *Lavin v. Hulick*, Case No. 09-cv-477-MJR, 2010 WL 2137250, *6 (S.D. Ill. May 27, 2010) (finding inmate who was deprived of his glasses but did not complain of any physical injury failed to allege a serious medical need; he was simply inconvenienced in that he was unable to read); *Freshwater v. Brankle*, No. 1:04-CV-2-TS, 2005 WL 3159151, at *6 (N.D. Ind. Nov. 28, 2005) (finding no serious medical need where plaintiff alleged he needed glasses to "alleviate headaches, blurred vision, and watery and burning eyes when reading" but he could still function well enough to handwrite grievances); *Swaissi v. Cotten*, No. 3-01-CV-1607-D, 2002 WL 492905, at *2 (N.D. Tex. Mar. 28, 2002) (dismissing claim as frivolous where plaintiff alleged inability "to focus and to see short distances" without his glasses, which made reading, writing, and watching television difficult, but he was still able to read and write well enough to file four lawsuits and prepare pleadings in those suits); *Canell*, 141 F. Supp. 2d at 1057 (finding no serious medical need where plaintiff complained he needed reading glasses and had headaches without them); *Harris v. Murray*, 761 F. Supp. 409, 413 (E.D. Va. 1990) (holding plaintiff failed to state a claim for deliberate indifference, in part, because need for reading glasses was not a serious medical need; while plaintiff was "inconvenienced" without his glasses, it was not cruel and unusual punishment to deny him the glasses).

were not serious. Additionally, Plaintiff was repeatedly asked about his vision during his deposition, and he made clear that the only thing he had trouble doing without his glasses was reading. To be clear, he could still read *without* glasses, just not as easily as he could *with* glasses, and reading without glasses gave him a headache. The headaches could be alleviated, however, by simply lying down and resting his eyes. Plaintiff was understandably frustrated by his impaired ability to read without glasses because he enjoyed reading and there was not much else to do in segregation. However, his visual impairment and his headaches are the type of minor condition that do not implicate constitutional concerns, and no reasonable jury could conclude otherwise.

Because Plaintiff failed to marshal evidence sufficient to show he was suffering from a serious medical need, he cannot succeed on his deliberate indifference claims and Defendants are entitled to summary judgment. In light of this conclusion, the Court need not address the second element of Plaintiff's deliberate indifference claim: whether Defendants acted with a sufficiently culpable state of mind. The Court also need not address Wexford's motion to strike (or Director Shicker and HCUA Brown's motion to join the motion to strike), which is aimed at evidence pertaining to the second element of the deliberate indifference claim.

## Conclusion

The motions for summary judgment filed by Defendants Wexford Health Sources, Inc., Louis Shicker, and Christine Brown (Docs. 125, 135) are **GRANTED**. Plaintiff's claim against them is **DISMISSED with prejudice** and judgment will be entered in their favor. Wexford's motion to strike (Doc. 140), and Director Shicker and HCUA Brown's motion

to join Wexford's motion to strike (Doc. 146) are **MOOT**.

There being no claims or Defendants remaining in this action, the Clerk of Court is **DIRECTED** to enter judgment and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: March 24, 2020**

<u>s/ Mark A. Beatty</u>
**MARK A. BEATTY**
**United States Magistrate Judge**